# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**RANDY WILLIAM MCCAFFERY,**

**Plaintiff,**

-vs-                                     Case No.  6:06-cv-884-Orl-UAM

**COMMISSIONER OF SOCIAL
SECURITY,**

**Defendant.**

_____

## MEMORANDUM OF DECISION

Plaintiff Randy W. McCaffery ["McCaffery"] appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying McCafrrey's application for a period of disability and disability insurance benefits. *See* Docket No. 1 (complaint).  For the reasons set forth below, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

On October 16, 2002, McCaffery filed a claim for disability insurance benefits and a period of disability, claiming disability as of April 2, 2002.  R. 58-60.  On January 31, 2005, the Honorable Philemina M. Jones, Administrative Law Judge ["ALJ"], held a hearing on McCaffery's claim in Orlando, Florida.  R. 202 - 44.  Non-attorney Rick Gach represented McCaffery at the hearing.  R. 202.  The ALJ heard testimony from McCaffery, his mother, and vocational expert Randolph Salmons ("VE").

On June 9, 2005, the ALJ issued a decision that McCaffery was not disabled and not entitled to benefits.  R. 14-23.  Following a review of the medical and other record evidence, the ALJ found that McCaffery could perform his past relevant work as an auto driver.  R. 23, Findings 7-8.  The ALJ found that McCaffery past work as an auto driver was within his residual functional capacity ["RFC"].  R. 23, Findings 6-7.  The ALJ concluded that McCaffery was not disabled.  R. 23, Finding 9.

On May 11, 2006, the Appeals Council denied review.  R. 7-9.  On June 28, 2006, McCaffery timely appealed the Appeals Council's decision to the United States District Court.  Docket No. 1.  On November 20, 2006, McCaffery filed in this Court a memorandum of law in support of his appeal.  Docket No. 17.  On February 20, 2007, the Commissioner filed a memorandum in support of his decision that McCaffery was not disabled.  Docket No. 23.  The appeal is ripe for determination.

## II.    THE PARTIES' POSITIONS

McCaffery assigns several errors to the Commissioner.  First, McCaffery claims that the Commissioner erred in disregarding the results of testing performed by Dr. Ysern.  Second, McCaffery claims that the Commissioner erred in failing to assess whether he met the criteria of Listing 12.05 for mental retardation.  Third, McCaffery contends the ALJ failed to develop the record fully as she did not call a Medical Expert.  Fourth, McCaffery argues the ALJ failed to consider substantial evidence regarding his functional limitations.  Fifth, McCaffery argues that the Commissioner failed to consider the combined effect of his obesity with his other impairments.  The Commissioner argues that substantial evidence supports his decision and the decision should be affirmed.

III.   **THE STANDARD OF REVIEW**

A.   **AFFIRMANCE**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord*, *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord*, *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

B.   **REVERSAL**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  The district court will reverse a

-3-

Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *accord, Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord, Bowen v. Heckler*, 748 F.2d 629, 631, 636 - 37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).

### C.    REMAND

The district court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. *Jackson v. Chater*, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).  To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. *Jackson*, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); *accord, Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir.

1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 872, 829 - 30  (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his basis for determining that claimant's depression did not significantly affect her ability to work) (treating psychologist acknowledged that claimant had improved in response to treatment and could work in a supportive, non-competitive, tailor-made work environment).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (ALJ should consider on remand the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish:  1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3.) there is good cause for failure to submit the evidence at the administrative level.  *See Jackson*, 99 F.3d at 1090 - 92; *Cannon*

*v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *see also*, *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).

A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. *Jackson*, 99 F.3d at 1095. With a sentence-six remand, the parties must return to the district court after remand to file modified findings of fact. *Jackson*, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.[1] *Id.*

## V.   APPLICATION AND ANALYSIS

### A.   THE FACTS

McCaffery was born on July 20, 1955, and was 49 years old at the time the ALJ issued her decision. R. 14, 58. McCaffery attended special education classes from third grade through his high school graduation. R. 78-87, 209. While in school, McCaffery was tested several times. When McCaffery was seven years old, his IQ was measured at 79. R. 82. At eight years of age, two separate tests were administered; one measured McCaffery's IQ at 69 using the Stanford-Binet, the other measured his IQ at 76. R. 85. When he was nine years old, his IQ was measured at 70 using the WISC test and the tester concluded that McCaffery was "functioning in the borderline range of

---

[1] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. *Jackson*, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. *Id.* In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. *Id.* Any Plaintiff intending to seek attorney's fees for past-due benefits under 42 U.S.C. § 406 (b)(1)(A) shall move the Court to include in any remand order an extension of the 14-day period described in Fed. R. Civ. P. 54 (d)(2)(B) so as to specify an extended deadline that follows the Commissioner's determination of Plaintiff's past-due benefits. *Bergen v. Comm'r of Soc. Sec.*, 454 F. 3d 1273, 1278 n.2 (11th Cir. 2006).

intellectual classification." R. 83.   At age 13, his IQ was measured at 66, which was in the mental defective range on the Stanford-Binet intelligence scale, but the test administrator concluded that McCaffery's actual intellectual functioning was closer to the borderline range of intelligence  R. 78.

On June 13, 1995, McCaffery underwent a physical consultative examination conducted by Nitin Hate, M.D.  Supp. R. Ex. 8F.  McCaffery reported a history of lung destruction of the right side due to pneumonia as a child and low back pain with radiation into his right lower extremity.  Dr. Hate found that McCaffery's mental functions and speech were within normal limits.  McCaffery's muscle strength was 4/5 in the left leg. There was decreased range of motion of the thoracolumbar region of the spine.  McCaffery walked with a severe limp. There was complete loss of sensations in the right leg and brisk reflexes on the left.  Dr. Hate opined that McCaffery was restricted to light physical or sedentary work.

As an adult, McCaffery's intelligence level was tested twice in conjunction with applications for Social Security disability benefits.  Dr. Austin, who evaluated McCaffery in June 1995, reported the following scores on the WAIS-R: Verbal, 72; Performance 94; Full Scale 82. R. 19; S2-5. These scores placed McCaffery in the low average range of intellectual functioning. R. 20,  S3. Dr. Austin concluded that McCaffery had an occupational problem, a life circumstance problem, and developmental reading and writing disorders.  R. 19, S4.

In September 2002, Dr. Ysern administered the WAIS-III to McCaffery.   R. 132-34. McCaffery's test scores ranged from 51 to 67, and Dr. Ysern concluded that the test results were valid. R. 133-34. Dr. Ysern diagnosed mild mental retardation. R. 19, 134. Dr. Ysern noted that McCaffery had mostly worked in construction, but had last worked at a furniture store for three weeks in 2002.

R. 132.  McCaffery was illiterate and could not read or write, and McCaffery's finances were handled by his mother because he was not able to independently manage his funds.  R. 133.  Dr. Ysern opined that McCaffery does not possess the capcity for understanding, memory and sustained concentration appropriate to his age.  R. 134.  McCaffery exhibits deficits in social functioning, adaptation and interactions.  *Id*.  Dr. Ysern concluded that McCaffery will have difficulty responding appropriately to coworkers, supervisors, and the public.  *Id*.

McCaffery is unable to read and relied on his mother to complete his Social Security benefits application and his job applications.  R. 209.  He obtained his driver's license by taking an oral examination.  R. 209.   McCaffery has held many jobs in the last 15 years, most of which were for a short period of time.  R. 63-66, 111.  His earnings exceeded the substantial gainful activity level in 1992, and 1998-2000.  R. 62.  His longest employment was for approximately 2.5 years as a driver for a rental car company.  R. 111.  As a driver, he would drive cars on a memorized route between the airport and Kissimmee.  R. 212-13.

State Agency psychologist Deborah L. Carter, Ph.D. reviewed McCaffery's records and completed a Psychiatric Review Technique (PRT) form on February 7, 2003.  R. 135-48.  Dr. Carter concluded that McCaffery had a 12.02 organic mental disorder – and not 12.05 mental retardation – which was "not severe."  R. 135.  )  Dr. Carter noted that McCaffery's mother reported that "he used to remember things but now it is hard secondary to nerves; does not concentrate."  R. 147.  Dr. Carter also found that McCaffery's allegations were only "partially credible" as he had worked multiple jobs and had many years of work above SGA.  *Id*.  Dr. Carter also deemed the IQ tests scores as not credible as they were inconsistent with record.  *Id*.

-8-

Another State Agency psychologist, Edmund S. Bartlett, Ph.D., reviewed McCaffery's records and completed a Psychiatric Review Technique Form on August 15, 2003. R. 166-79. Dr. Bartlett also concluded that McCaffery had a 12.02 organic mental disorder which was not severe. R. 166. Dr. Bartlett noted that McCaffery last worked on April 2, 2002, as a handy man for Rent-to-Own and had been let go from most jobs fairly quickly. R. 178. Dr. Bartlett noted that McCaffery became dependent on his mother in 2003, although she had continued to try to teach him to be independent. *Id*. McCaffery had a history of being made fun of, and a history of many job attempts that had ended because of his illiteracy. *Id*. He performed simple tasks in the home environment to a reasonably productive level, but he needed reminding because he was forgetful. R. 179. McCaffery's pace was slow but persistent in meeting personal needs. *Id*. Dr. Bartlett did not comment on previous IQ tests.

On February 27, 2003, Charles Grant, M.D. performed a physical consultative examination. R. 149-57. McCaffery's height and weight were recorded at 69 inches (5'9") and 281 lbs. R. 150. McCaffery's chief complaints were illiteracy, back pain and shortness of breath. R. 149. McCaffery's lungs were clear and his lumbar x-ray and pulmonary function studies were normal. R. 150-52. On physical examination, there were no wheezes, rhonchi or rales. R. 150. There was no deformity, redness, heat, swelling, pain, tenderness or other signs of inflammation. R. 151. There was decreased range of motion of the lumbar spine. R. 152. McCaffery's motor, sensory and reflex findings were normal. *Id*. There were no muscle spasms noted. *Id*. Straight and seated leg raising test was normal. *Id*. McCaffery's gait was only minimally antalgic without assistive device. *Id*. His grip and fine manipulation were normal. *Id*.

On March 18, 2003, Keith R. Holden, M.D. completed a Physical RFC form based on a record review.  R. 158-65.  Dr. Holden diagnosed "level III obesity."  R. 160.  Recommended exertional limitations were: frequent lifting up to 25 pounds, 50 pounds occasionally; stand or walk 6 hours per 8-hour workday; sit six hours per 8-hour workday.  R. 159.

On August 20, 2002, David Z. Kitay, M.D. completed another Physical RFC form based on a record review.  R. 180-87.  The primary diagnosis was degenerative disk disease and a secondary diagnosis of obesity.  R. 180.  McCaffery's height and weight were 69" and 281 lbs, respectively. Dr. Kitay recommended the same exertional limitations as had Dr. Holden.

### B.     THE ANALYSIS

#### 1.     Determination that McCaffery Did Not Meet Listing 12.05

Although McCaffery complains that the ALJ failed to specifically address Listing 12.05, the ALJ found that McCaffery's impairments were not severe enough to meet or equal one of the impairments listed in Appendix 1, Subpart P, and Regulations No. 4.  R. 20.  The ALJ, therefore, determined that McCaffery did not meet Listing 12.05.  For various reasons, McCaffery contends the ALJ's determination was erroneous.

Section 12.05 of the Listings requires a claimant to either have a valid IQ score of 59 or less; or a valid IQ score between 60 through 70 and physical or additional mental impairment imposing an additional and significant work-related limitation of function; or have a valid IQ score between 60 through 70 and have marked limitations in two broad domains of mental functioning.  20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.05; 20 C.F.R. §§ 404.1525, 416.925.  Additionally, Section 12.05 of the Listings provides that mental retardation refers to significantly subaverage general intellectual

functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22. *Id*.

### a.   Listing 12.05(B)

McCaffery appears to rely on Listing 12.05(B), which provides that the Listing is met with a valid verbal, performance, or full scale IQ of 59 or less. Docket 17 at 14. Dr. Ysern opined that McCaffery's Verbal IQ was 51 and his Full Scale IQ was 54, and that the test was valid. R. 134.[2] The ALJ found Dr. Ysern's opinion to be inconsistent with the overall medical record and found the IQ tests not to be credible as they were inconsistent with the record in its entirety. R. 20.

McCaffery argues that once there is a valid IQ score, any functional limitations are irrelevant. McCaffery misapplies the law. It is only when the ALJ *accepts* the IQ score as valid that the ALJ is thereafter prohibited from considering such factors as age, education and work experience. *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). An IQ score "is not necessarily conclusive of mental retardation where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." *Id*. The ALJ, therefore, was free to consider evidence of McCaffery's daily activities, behavior, work history and educational placement tests. *Id*.

Despite McCaffery's inability to read, the evidence showed that he was able to hold several jobs at substantial gainful activity level. The evidence further showed that McCaffery related well with others and was independent with his daily activities. He held a driver's license without restrictions. His concentration and attention were adequate. His pace was slow but persistent in

---

[2] Where verbal, performance, and full scale I.Q.'s are provided in the Wechsler series, the lowest score is used in conjunction with Listing 12.05. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(D)(6)(c).

meeting personal needs.  The ALJ also considered McCaffery's educational placement,[3] and the opinions of the State Agency psychologists.  R. 19, 20. This evidence was properly considered by the ALJ.

McCaffery also argues that the ALJ erred in failing to obtain evidence from a medical expert or to obtain testimony from Dr. Ysern.   The regulations normally require a consultative examination "only when necessary information is not in the record and cannot be obtained from the claimant's treating medical sources or other medical sources." *Doughty v. Apfel*, 245 F.3d 1274, 1281(11th Cir. 2001) (citing 20 C.F.R. § 404.1519a(b)).  The situation presented in McCaffery's case, however, was not one in which information was missing from the record.   In this case, the ALJ rejected Dr. Ysern's opinion based on evidence that supported a contrary finding.  The ALJ's action was consistent with the law.  *See, Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1986).

The Court concludes that substantial evidence supported the ALJ's finding that McCaffery did not meet Listing 12.05(B).

### b.　　Listing 12.05(C)

McCaffery also apparently argues that he met Listing 12.05(C), which provides that the Listing is met with a valid verbal, performance, or full scale IQ of 60 through 70 *and* a physical or other mental impairment imposing an additional and significant work-related limitation or function. McCaffery argues that his mental impairment imposes difficulties in holding and maintaining employment at the substantial gainful activity level.  Docket 17 at 16.  McCaffery argues that the ALJ

---

[3] Although McCaffery argues that the ALJ did not specifically mention his IQ test results from his childhood, by discussing McCaffery's placement in special education, it is clear that the ALJ considered the evidence.  There is "no rigid requirement that the ALJ specifically refer to every piece of evidence" in the decision, so long as the decision shows enough to conclude that the ALJ considered the claimant's condition as a whole.  *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).

failed to consider that in 10 out of 15 of the years under consideration, his income failed to meet the substantial gainful activity level. *Id*. He also argues that the ALJ failed to consider the lay testimony of his mother, and such failure was reversible error. *Id*.

Initially, McCaffery does not point to any test that the ALJ found to be valid that placed his IQ in the 60-70 range. As the ALJ rejected Dr. Ysern's opinion as inconsistent with the record, the only other measurement as an adult occurred in 1995 when Dr. Austin measured McCaffery's IQ at 72. Thus, McCaffery fails to establish that he meets the first prong of the 12.05(C) Listing.

As to the remainder of McCaffery's argument, he is correct that the ALJ did not specifically refer to the testimony by McCaffery's mother in her decision. The ALJ, however, affirmed that she did consider all of the evidence of record. R. 17. The testimony of McCaffery's mother regarding McCaffery's limitations and abilities can be summarized as follows: he cannot read (R. 228); she fills out all job application forms and disability benefits forms for him (R. 228); she handles his finances because he is unable to (R. 229); he can grocery shop and prepare his own meals (R. 229-30); he cannot work on computers (R. 231); he cannot perform maintenance work because of back problems (R. 232). A review of the ALJ's decision reflects that she considered this evidence. The decision is replete with references regarding McCaffery's inability to read or write, and the ALJ found his inability to read or write imposed moderate restriction of activities of daily living. R. 20. The decision also reflects other evidence that McCaffery was unable to make calculations and could not count money. R. 19, 21. The ALJ also considered McCaffery's back pain and the limitations caused by such pain. R. 18, 19, 21. The ALJ also acknowledged claimant's testimony that he was able to cook and take care of his personal needs. R. 21.

While the testimony and statements of lay witnesses must be considered, an ALJ does not have to discuss every piece of evidence presented as long as the record is developed fully and fairly.   See *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).   The ALJ clearly considered those issues testified to by McCaffery's mother, and the ALJ's failure to discuss specifically such testimony is not reversible error.

The ALJ also considered the impact of McCaffery's mental condition on his ability to work and found that his condition did not significantly impair his ability to work.   The ALJ obviously considered McCaffery's work levels, and obtained testimony from the VE that McCaffery could perform his past relevant work.   R. 20, 22.   Substantial evidence supports the ALJ's decision that McCaffery did not meet Listing 12.05(C).

### b.   Listing 12.05(D)

McCaffery also apparently argues that he met Listing 12.05(D), which provides that the Listing is met with a valid verbal, performance, or full scale IQ of 60 through 70 *and* two of the following: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation , each of extended duration.

As stated above, McCaffery fails to show that there is a valid IQ score that places him within the appropriate range.   With respect to the other limitations, the ALJ specifically considered the extent

of McCaffery's limitations and found that his limitations did not rise to the required levels.  R. 20. [4]

Again, substantial evidence supports the ALJ's findings that McCaffery did not meet Listing 12.05(D).

### 2.  Consideration of McCaffery's Obesity in Combination with his Other Impairments

McCaffery asserts that the ALJ failed to make specific findings as to the combined effect of his obesity, degenerative disc disease and pulmonary problems.  Docket 17 at 18-19.  Specifically, McCaffery argues that the ALJ failed to comply with SSR 02-01p and assess "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  Docket 17 at 18 n.16.  The ALJ's findings must be specific and well-articulated as to the effect of the combination of impairments when determining whether an individual is disabled.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).

The ALJ found that McCaffery had impairments of obesity, a history of recurrent pneumonia resulting in removal of half of his right lung and degenerative disc disease of the lumbar spine, and an organic mental disorder, and that these impairments were severe but not severe enough to meet one of the listings. R. 20; R. 23, Findings 3, 4.  None of the medical opinions in the record address any effect McCaffery's obesity has upon his ability to perform routine movement and physical activity.

The ALJ "considered the totality of the evidence" in determining McCaffery's RFC.  R. 22. Based on the decision as a whole, it is clear that the ALJ considered the combination of McCaffery's impairments.  The ALJ cannot be faulted for failing to comment specifically on the effect of McCaffery's obesity on his other impairments when there is no record evidence that his obesity had

---

[4] "[T]he claimant's organic mental disorder has imposed moderate restriction of activities of daily living based upon his inability to read and write, mild difficulties in maintaining social functioning, mild difficulties maintaining concentration, persistence or pace without repeated episodes of decompensation." R. 20.

any effect on his other impairments. The Court, therefore, finds that the ALJ did not err in assessing the combination of McCaffery's impairments.

**VI.     CONCLUSION**

For the reasons stated above, the decision of the Commissioner is **AFFIRMED**.  The Clerk is directed to enter a separate judgment in favor of the Commissioner and to close the case.

**DONE AND ORDERED** on August 10, 2007, in Orlando, Florida.

*Donald P. Dietrich*

DONALD P. DIETRICH
UNITED STATES MAGISTRATE JUDGE

The Court Requests that the Clerk
Mail or Deliver Copies of this Order to
All Counsel of Record and to:

The Honorable Philemina M. Jones
Administrative Law Judge
c/o Social Security Administration
Office of Hearings and Appeals
Suite 300, Glenridge Building
3505 Lake Lynda Drive
Orlando, FL          32817-9801